## Goldstein v. Adams Express Company, Appellant.

*Carriers—Common carriers—Express companies—Loss of money—Evidence—Charge.*

In an action against an express company to recover for the loss of a package of money, there was no evidence that the company contracted to ship the package on the first train. The defendant presented this point: "That inasmuch as the package of money did not go on the first

train, it is not evidence of defendant's negligence." The court in affirming this point qualified the affirmance in such a way as practically to leave it to the jury to say whether there was negligence or not in failing to ship it by the first train. *Held*, that the defendant was entitled to an unqualified affirmance of the point, and that the judgment in favor of the plaintiff should be reversed.

In the above case it appeared that the plaintiff signed a printed statement indorsed on the envelope that it was sealed with wax in his presence. This indorsement was not included in the printed terms and conditions on which the company agreed to carry the package, and to which the plaintiff agreed by acceptance of the bill of lading. The plaintiff was permitted to testify that the wax seals had not been placed on the envelope at the time the statement was signed, and the envelope was delivered to the defendant's agent. The other oral testimony was such that the court could not declare it to be an admitted or undisputed fact that the contents of the package were in the same condition when it was received at the destination as when the seals were placed upon it at the place of shipment. *Held*, (1) that the plaintiff was not estopped by reason of his signing the certificate, from testifying that the seals were not on the envelope at the time he signed; (2) that the whole question was for the jury under appropriate instructions as to the weight to be given, in the first place to the plaintiff's written statement indorsed upon the envelope, and in the second place to the appearance of the seals upon the envelopes at the time it was received at the destination.

Argued May 2, 1905. Reargued May 9, 1906. Appeal, No. 239, April T., 1905, by defendant, from judgment of C. P. Cambria Co., March T., 1904, No. 424, on verdict for plaintiff in case of A. B. & H. S. Goldstein v. Adams Express Company. Before RICE, PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, on reargument.

Assumpsit for the loss of money from a package.

O'CONNOR, P. J., charged as follows:

In the issue you have been sworn to try, A. B. & H. S. Goldstein seek to recover from the Adams Express Company the sum of $104, with interest from November 9, 1903. The ground upon which the plaintiffs seeks to recover, as stated in the evidence, is that on November 9, 1903, the plaintiffs delivered to the agent of the defendant company, at Portage, in this county, a package which they allege contained $1,100 in

currency, commonly called paper money; that the Adams Express Company was paid for the delivery of this package to the First National Bank in Altoona, and that when the package was delivered to said First National Bank in Altoona it contained but $996, or $104 less than the amount originally placed in the hands of its said agent.

\*    \*    \*    \*    \*    \*    \*    \*

The plaintiffs testify to the counting of the money; one of them testified to the delivery of the package at Portage, and that at the time he delivered it to the agent of the express company it contained $1,100. You consider that testimony first, for the purpose of determining whether or not you believe, from the weight of the evidence in the case, that the plaintiffs, or one of them, delivered $1,100 to the agent of the Adams Express Company at Portage. If so, it was the duty of the Adams Express Company to deliver that package to the consignee in the condition in which it was delivered to them, or rather with its contents intact, unmolested, and not detracted from. That the package was delivered to the agent of the Adams Express Company is not questioned. That the same package was delivered to the First National Bank in Altoona is not questioned, but the cashier or assistant cashier of the First National Bank of Altoona testified that when it was delivered it contained $104 less than $1,100. He says he called in a witness, after counting the money, who also counted the money and who found the package to contain only $996. The testimony in the case does not tend to show that when the package was delivered to Altoona it contained more than $996, but it does tend to show that the package, when delivered to Altoona, contained the same money that it contained when they received it; in other words, that the defendant company delivered the package intact, that it had not been tampered with.

You must consider, then, whether or not you are satisfied, from the weight of the evidence in the case, that the package, when delivered to the Adams Express Company, contained $1,100. If you find that fact affirmatively, and you find that while in the custody of the Adams Express Company there were $104 extracted from the package, the company would be liable in this case. If you are not satisfied, by the weight of

the evidence, that the package contained $1,100 when delivered, but only contained $996, then you need go no farther, but will render a verdict for the defendant.

The question in this case is purely for you. You have heard all the testimony. Discover where the discrepancy of $104 has crept in. If you find, from the weight of the evidence, that the $104 must have been taken out by some person after the package was delivered to the Adams Express Company and before it was delivered to the custody of the First National Bank in Altoona, then find for the plaintiffs for $104, with interest from November 9, 1903. If you are satisfied that $104 was not extracted from the package while it was in the custody of the Adams Express Company or its agents, then you would find for the defendant company.

Counsel for the defendant company has asked us to specially charge you upon certain points:

1. That inasmuch as the package of money did not go on the first train it is not evidence of defendant's negligence. *Answer:* It is contended by counsel for the plaintiffs that the money should have gone on the first train and that it was mere carelessness that allowed it to remain in the office, and that that is likely where the loss occurred. We cannot say that this was carelessness or was not carelessness. There was no particular obligation on part of the Adams Express Company to ship the money on the first train; they could send it on the first, second or third train. The obligation resting on the Adams Express Company was to deliver the package with the contents intact, as they received it, to the First National Bank in Altoona, and with that explanation we affirm the point; that is, to the extent that there was no particular obligation on the company to ship the express money package on the first train. [1]

2. That the defendant company cannot be held liable for the contents of the envelope if it was delivered in good order and the seals intact. *Answer:* The plaintiff in the case has testified that it was not sealed in his presence. If, before it was sealed, part of the money was extracted after it had been given into the custody of the agent at Portage, the company would be liable. If there is evidence of the seals being intact, which there is, and the envelope unmolested—you are not bound by

the fact that the plaintiff denies that it was sealed in his presence—that would be at least strong evidence that the envelope had not been tampered with. The duty of the company was to deliver the envelope with the contents intact as received, and, as we said in the general charge, if the money was taken out while the package was in their custody they are liable for it and we cannot affirm the point as it is drawn, because of the testimony in the case. [2]

3. That the burden is not on the defendant to show when or where the money was taken, if it was taken, if the envelope was delivered in the same condition as it was received from the consignor. *Answer;* If the company delivered the package intact as it received it from the consignor, nothing being extracted from it during the time it was in the company's possession, the defendant would not be liable. With that explanation we affirm the point. [3]

4. That the defendant company was in this case a bailee, and as such was required to give it due care, with all the usual and reasonable diligence and attention for its safe delivery, and to deliver it as it was received from the consignor. *Answer:* If there were nothing in the point but the last clause we would affirm it without any qualification. The company was a bailee and it was required to give due care, with all the usual and reasonable diligence and attention, and was required to deliver the package as received from the consignor, undoubtedly. We cannot affirm all that is in the point. We add that the company would be responsible for the loss of the $104 if that loss occurred while the package was in the possession of the company's agents, and if you find that as a fact, from the weight of the evidence in the case, your verdict would be for the plaintiffs for $104, with interest from November 9, 1903. If you do not so find, your verdict should be for the defendant. It is purely a question for you. [4]

5. Under all the evidence the verdict should be for the defendant company. *Answer:* We refuse to so charge you. You must determine the facts in the case, and, if you can, determine where the money was lost, and as you determine whether there was any money lost or whether it was a mistake on part of plaintiffs in counting the money they originally put into the envelope you will determine your verdict. [5]

Verdict and judgment for plaintiff for $109.40. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*H. W. Storey*, for appellant.—An express company is not an insurer as to time, but it is the duty of the company to carry and deliver goods with reasonable promptness, and it is liable for any loss or damage occasioned by its failure to do so: 12 Am. & Eng. Ency. of Law (2d ed.), 548; Burke v. U. S. Express Co., 87 Ill. App. Ct. 505; American Express Co. v. Second Nat. Bank, 69 Pa. 394.

We contend the court should have affirmed the first point without modification or qualification for the reason there was no contract that it should go on the first train, and secondly it was not delivered to the agent in time to prepare it and the accompanying waybills. The answer left it to the jury to say whether there was negligence or not.

*John E. Evans*, with him *J. W. Leech* and *Alvin Evans*, for appellees.—It was the duty of the defendant to safely deliver the package, with its contents, to the First National Bank of Altoona. Having failed to do so the question of its responsibility and negligence arises under all the facts and circumstances of the case: Atwood v. Reliance Transportation Co., 9 Watts, 87; Laing v. Colder, 8 Pa. 479; Farnham v. Camden, etc., R. R. Co., 55 Pa. 53; American Express Co. v. Sands, 55 Pa. 140; Grogan v. Adams Express Co., 114 Pa. 523; Menner v. D. & H. Canal Co., 7 Pa. Superior Ct. 135; P. C. C. & St. L. Railway Co. v. Sheppard, 1 Am. Neg. Rep. 517; Pierce v. Southern Pacific Co., 1 Am. Neg. Rep. 211; American Express Co. v. Second Nat. Bank, 69 Pa. 394.

OPINION BY MORRISON, J., December 10, 1906:

The plaintiffs had conducted a general store at Portage for fourteen years, and it was their custom to send money to the banks in Altoona very frequently, sometimes once a week, by the defendant express company. To facilitate the transaction of the business the defendant furnished large manilla envelopes

which were kept by the plaintiffs in their store, where they would count the money, place it in the envelope, and seal it with the mucilage lap and write the full address, with their consent to all the requirements of the contract as provided by the printed blanks. The plaintiffs would then bring the package to the office of the defendant company, where three wax seals would be placed thereon in the presence of the person delivering the package and a receipt given for the same. The form of the envelope used in the present controversy was: "Adams Express Company. Contents not counted by agent and envelope sealed with wax in my presence. Signed: H. S. Goldstein, Shipper. $1,100. From A. B. and H. S. Goldstein, Portage. For First National Bank, Altoona, Pa., November 9, 1903. To shipper: Agents of Adams Express Company are forbidden to count the contents or address this envelope and must stitch and seal with wax in presence of shipper."

The testimony tended to show that on Saturday evening, November 7, 1903, one of the plaintiffs counted $1,100, in paper money, putting the same in the envelope, the address of which is quoted above, and placed the envelope in the plaintiffs' safe; that on Sunday both of the plaintiffs counted the money and found it to be $1,100, and it was then replaced in the safe. On Monday morning, November 9, H. S. Goldstein took the package to the express office where it was sealed, and he signed the following indorsement on the envelope: " Contents not counted by agent and envelope sealed with wax in my presence." The package was forwarded to the First National Bank, Altoona, Pa., and when opened it contained $996, there being a shortage of $104.

In this action of assumpsit to recover the $104, with interest, the above facts were in substance shown, without dispute, except that H. S. Goldstein testified that he did not see the envelope sealed with wax. In this he is flatly contradicted by the written statement which he signed, and with which he had been familiar for many years, and by the testimony of the express agent, Hoover, who testifies that he did not count the money and that he sealed the package with three seals of wax in the presence of H. S. Goldstein.

The testimony of all the witnesses practically agrees that the wax seals on the envelope, when received at Altoona, were in-

tact, and that the money could not have been abstracted from the envelope in the condition in which it was found after the seals were placed thereon.    Therefore, the pinch of the case was whether or not the money was in the package when H. S. Goldstein delivered it at the express office on Monday morning.    If the wax seals were placed upon it in the presence of Goldstein, then it seems absolutely certain that the $104, was never in the envelope, or else it was abstracted before it was delivered to Hoover at the express office.

Under this condition of affairs, the only way the plaintiffs could get to the jury was on the testimony of H. S. Goldstein to the effect that he did not see Hoover place the wax seals upon the envelope.    This allowed the jury to infer that the money was abstracted after Hoover received the package and before he placed the seals thereon.    Therefore, an important question in the case is the sufficiency of H. S. Goldstein's testimony to carry this question to a jury over his own written certificate that it was " sealed with wax in my presence," and the positive testimony of Hoover that he did seal it with wax in the presence of Goldstein.

This rule was evidently established by the express company to remove from its agents the temptation of counting and possibly of abstracting money from such packages.    It is a reasonable rule and ought to be enforced in good faith.    The plaintiffs had been shipping money by this company for many years and each time signed a certificate to this effect.    Therefore, being familiar with the rule, a duty rested upon them to comply with it.

At the trial the defendant's counsel presented five points and the five assignments of error are based upon these points and their answers.    The points are:  " 1. That inasmuch as the package of money did not go on the first train it is not evidence of the defendant's negligence.    2. The defendant company cannot be held liable for the contents of the envelope if it was delivered in good order and the seals intact.    3. That the burden is not on the defendant to show when or where the money was taken, if it was taken, if the envelope was delivered in the same condition as it was received from the consignor.    4. That the defendant company was, in this case, a bailee and as such was required to give it due care, with all the usual and reasonable

198  GOLDSTEIN *v.* ADAMS EXPRESS CO., Appellant.

Opinion of the Court—Concurring Opinion.  [32 Pa. Superior Ct.

diligence and attention for its safe delivery, and to deliver it as it was received from the consignor.  5. Under all of the evidence the verdict should be for the defendant company."

In the opinion of the majority of the court the first assignment of error must be sustained.  The first point giving rise to it was clear and concise and it should have been affirmed without qualification.  The answer to this point covers nearly half of a printed page and we cannot say, with any degree of certainty, that it did not confuse and mislead the jury.  To us this answer is not clear and we think it tends to confusion.  When counsel presents a point so clear and concise as this one, he is entitled to a concise answer.  The majority of the court is not in favor of sustaining the four remaining assignments and, therefore, we can only reverse the judgment with a new venire.

In the opinion of the writer there was error in the answers to the remaining four points, and I would sustain the assignments of error based thereon.  But, inasmuch as the majority of the court is not with me in this, I refrain from discussing said assignments, and content myself with simply saying that the court is not unanimous in either dismissing or sustaining the second, third, fourth and fifth assignments.  However, the concurring opinion filed herewith, shows that the majority of the court only sustains the first assignment of error.

The first assignment of error is sustained and the judgment is reversed with a .v. f. d. n.

RICE, P. J., concurring :

There was ample testimony of a positive nature that there were $1,100 in the envelope when the plaintiffs delivered it to the defendant's agent at Portage for transmission to Altoona, and that there were only $996 in it when it was delivered to the consignee.  Notwithstanding this testimony it is contended that the court ought to have given binding instructions for the defendant.  This conclusion is based on the premises, first, that it is an admitted fact that no part of the money could have been taken out of the envelope in the course of transmission after it was sealed with sealing wax ; secondly, that the plaintiffs are estopped to deny that the envelope was sealed in the presence of the member of the firm who delivered it to the defendant's agent.  If either one of these premises be unsound

the court was right in refusing to give binding instructions for the defendant. I am of the opinion that neither is sound, and will briefly suggest the reasons which have led me to the conclusion, in which the majority of the court concurs, that none of the assignments of error excepting the first can be sustained.

Grant that the wax seals, which were upon the package when it reached the consignee, appeared to be intact, it is not beyond the range of possibility that the package had been opened in the course of transmission, and resealed in such manner as to prevent detection upon such examination as these witnesses gave. It would have been more satisfactory if the defendant had produced the envelope which was shown to have been delivered to its agent or employee after it had been opened by the consignee at Altoona. But apart from this consideration, the oral testimony was such that the court could not declare it to be an admitted or undisputed fact that the contents were in the same condition when it was received at Altoona as when the seals were placed upon it at the place of shipment.

Nor would the court have been justified in charging the jury that there could be no recovery unless they found that the money was abstracted from the envelope after the wax seals were placed upon it. True, the plaintiff signed the printed statement indorsed on the envelope that it was sealed with wax in his presence, and his oral testimony in opposition to this ought to be closely scrutinized by the jury. Perhaps the court would have been warranted in saying to the jury that it ought not to be accepted unless they were clearly convinced that it should prevail over his written declaration. But it is to be borne in mind that the terms and conditions on which the company agreed to carry the package, and to which the plaintiffs agreed by acceptance of the bill of lading, are set forth in the latter paper, which was at once a receipt and a contract. The correctness of the statement indorsed on the envelope which was signed by the plaintiff was not included in these terms and conditions. I am warranted in saying, therefore, that it was not a term or condition of the contract on which the package was shipped. Further, it is to be noticed that according to the testimony of the defendant's own witness the wax seals had not been placed on the envelope at the time the statement was signed and the envelope was delivered to the defendant's

agent.   The question, therefore, in dispute between these parties was as to whether it was sealed in the plaintiff's presence after he had delivered it to the defendant's agent, and before the latter had delivered to the plaintiff the bill of lading.   This being so I am unable to agree that the statement estopped the plaintiff from showing the truth as to this matter of fact in dispute.   But even if it must be presumed, contrary to the fact which a jury might find from the testimony, that the envelope was sealed with wax in the plaintiff's presence, it does not necessarily and conclusively follow that it must be presumed to have been so sealed at the very instant it was delivered into the hands of the defendant's agent, and, therefore, that the contents were not disturbed in the meantime.   It was not incumbent on the plaintiff to show at what period of time between the delivery of the package for transmission, and its delivery to the consignee, the money was abstracted.   The whole question was for the jury under appropriate instructions as to the weight to be given, in the first place to the plaintiff's written statement indorsed upon the envelope, and in the second place to the appearance of the seals upon the envelope at the time it was received at Altoona.